E. A. BISBEE & others *vs.* THOMAS FADDEN & another.

Norfolk.    March 20. — June 18, 1885.    W. ALLEN, COLBURN, & HOLMES, JJ., absent.

If the members of a fire-engine company of a town take and detain, in order to keep it from the succeeding company, property used in furnishing the hall occupied by the company, and for the general purposes of the company, which has been bought from the general funds of the company, and has passed, from year to year, to the succeeding company, the members of the new company may maintain replevin for the property without a demand, although, at the time of the original taking, they had not been appointed enginemen.

REPLEVIN of certain personal property. Writ dated June 2, 1882. The plaintiffs, nineteen in number, are described in the writ as members of the Washington Engine Company of Holbrook. Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiffs introduced evidence tending to show that, as early as 1855, an engine company was in existence in Holbrook called the Relief Engine Company, which continued to exist, by yearly organization under that name, until a new engine was purchased by the town, named the Washington Engine, which took the place of the old Relief, and the company thereafter organized, from year to year, to man said engine, was well known as the Washington Engine Company. Said company has always occupied and used a hall or rooms provided and partly furnished by the town for keeping the engine and for the general business purposes of the engine company. From the above date enginemen have been regularly appointed each year, who each year have organized themselves into an engine company, and manned and managed the engine so provided. It was not disputed that the Relief and Washington engine companies were the same company, organized yearly, except in name.

The town of Holbrook, at the April town meeting in 1879, voted to accept the present statute law in regard to the fire department and the formation thereof; and, in and after said year, engineers were appointed pursuant to said vote, who yearly approved enginemen to constitute said Washington Engine Company. No change in the fire year, as established by law, from

May 1 of each year to May 1 of the following year, appeared to have been made by vote of said town. The plaintiffs were the members of said company approved and organized as the Washington Engine Company for the fire year 1882–83.

The company approved for the previous fire year 1881–82 received all the articles of property claimed in the replevin writ from the company of the previous year.

It appeared that said property, with the exception of a trumpet and the officers' badges, had always been kept about the company's engine-house and engine, and consisted of articles for furnishing the company's hall, and for the general purposes of a fire company; and that, excepting said trumpet and badges, said property had always remained in the company's building, unless when in use for fire purposes. The property had accumulated from year to year by purchase from the general funds of the company, excepting a banner and some pictures, which were presented to the company, and the trumpet, which was won as a prize at a firemen's muster. The money remaining in the hands of the treasurer at the end of each year had usually been handed over to the treasurer of the next company, and the property had always passed, from year to year, to the succeeding company. The trumpet and badges were kept during the fire year by the foreman of the company; and the defendant Fadden, who was the foreman at the end of the fire year 1881–82, testified that it was the custom for the foreman, at the end of the year, to collect the badges, and to hand them, with the trumpet, to the foreman appointed by the company for the next year.

It appeared that there were differences existing between members of the company for 1881–82; and that a majority of the members approved by the engineers for that year resigned, or refused to act, previously to April, 1882. Engineers who had the appointment of enginemen for the following fire year 1882–83 were appointed in April, 1882, by the selectmen.

On April 29, 1882, the remaining members of the company passed a vote, as appeared by the company's records, appointing a committee of three, consisting of one Packard, the defendant Marston, and one Buzzell, "to take charge of the company's property after May 1st." Both of the defendants and the other

members of the committee of three took part in the meeting of April 29, and voted for the appointment of said committee.    On May 1, 1882, Marston and Buzzell saw the defendant Fadden, who consented to have the property of the company stored in his house; and, early in the morning of May 2, Marston and Buzzell removed the company's property in the engine-house, and took it in a wagon to the house of Fadden.    Fadden caused the badges to be collected and stored with the rest of the property in his house, and Marston called upon the clerk of the company and took and kept possession of the record-books, which were taken from him under the replevin writ.

The defendants and all the members of the committee testified that they took the property, by virtue of said vote, " for safe keeping" for the old company.    All of them testified, upon cross-examination, that they anticipated no danger to the property where it was before they took it; that they did not take it with the purpose of handing it over to the new company, when approved by the engineers; and they refused to state whether they regarded the Washington Associates as the old company, and did not deny that they so regarded them.    Some of the members of the company of 1881–82, after May 1, met and held meetings and appointed officers; they called themselves the Washington Associates, and proposed by their acts to keep up the organization of the old fire company for 1881–82, for fire purposes.    They proposed to use pails in the extinguishment of fires, and had no engine, and were not in any way a part of the regular fire department of the town.

The defendants and the other members of the committee of three testified that they knew the regular fire company had always been organized in the month of May of each year, and they knew, in May, 1882, that men were holding meetings, handling the Washington engine, and doing the usual work of the engine company in and about the engine-house, and with the engine, during said month, and up to the date of the replevin writ.

No offer appeared to have been made by the defendants, or any of said committee, to said newly organized company, or any of its officers or members, to return said property taken, or any part of it; nor did it appear that any of the plaintiffs demanded

said property of them after they were approved by the engineers. Said new company for 1882, after being approved, met and organized on May 15, 1882.

The plaintiffs called one Thurston P. White, who testified that he was appointed an engineer of the town on May 3, 1882; and, on cross-examination, testified that he conversed with several members of the company about getting back the property taken by the defendants; that all of them were desirous to get the property back; that he, as an engineer of the town, was advised by counsel that the remedy was by replevin, and that the suit must be brought in the name of the members of the Washington Engine Company; and that the writ was served by his directions, and he took possession of the property, and had since held it, with the knowledge of the company.

At the close of the evidence, the defendants asked the judge to instruct the jury that the plaintiffs could not recover. The judge declined so to do. The defendants then asked the judge to instruct the jury as follows:

1. The defendants, being the agents of the original holders, were rightfully in possession of the property replevied; therefore this suit cannot be maintained, unless the plaintiffs, before bringing this suit, made a demand on the defendants, or their principals, which was refused. 2. Replevin cannot be maintained against a party who is rightfully possessed of the property, until a demand and refusal. 3. If the defendants were holding the property for the benefit of the successors of the engine company of 1881–82, in order to constitute a valid demand, satisfactory evidence of the fact that the plaintiffs were successors, and as such entitled to the property, that is to say, that they had been duly approved by the engineers, should have been exhibited at the time of the demand. 4. To maintain replevin, either a tortious taking or a tortious detention is necessary. No tortious taking can be established, unless the property came illegally or fraudulently, at the beginning, into the hands of the defendants. If the engine company of 1881–82, being entitled to the possession of the property, placed the same in the possession of the defendants for safe keeping, there was no tortious taking of it, and the plaintiffs cannot recover in this action on that ground. There can be no tortious detention until the

defendants knew by proper evidence, i. e. the certificate of the engineers, that the plaintiffs were entitled to the possession of the property, and had properly demanded it of the defendants or their principals. 5. If the plaintiffs, as members of the Washington Engine Company, were entitled to the possession of the property replevied, in order to maintain this action they must show that they demanded the property before bringing their action, and exhibited to the party upon whom the demand was made evidence of the fact that they had been duly organized and approved as members of the Washington Engine Company for the year 1882–83, and that there was a refusal to deliver upon such demand. 6. The demand must have been made on, and notice of their approval given to, some person who had the power and means of delivery. 7. The fact that the plaintiffs were approved as members of the Washington Engine Company, if they ever were, confers upon them no title to, or right of possession of, the property replevied. 8. If the jury find, on the whole evidence, that the action was commenced by T. P. White, without the direction or assent of the plaintiffs, and that they have not affirmed his action in the matter by any action taken by the plaintiffs as a body, this action cannot be maintained, and the verdict must be for the defendants.

The judge declined so to instruct the jury, and instructed them as follows :

" The property of a fire-engine company, which is bought from a common fund during its existence, or which is given upon no trust, may be disposed of as the members may wish ; but if property is acquired upon a trust that it shall be used according to the trust imposed, as long as the company exists, and then transmitted to its successors, it cannot be used otherwise than according to the trust. It is for the jury to say whether this property which was given was given upon any trust, and what the trust was. It is for the jury to say, upon the evidence, whether the property was impressed with a trust that it should be kept in the hall of the company.

" The plaintiffs contend that the property in the hall was impressed with a trust that it was to be kept or left in the hall, and, at the end of the year, when their right expired, they should protect the property from loss, and give it over to the next

company when organized. It is for the jury to say whether there was such a trust.

" The plaintiffs cannot recover in replevin, unless they show that the defendants have done some wrong to the property. The plaintiffs must first show their right to have the property, and then that the defendants have been guilty of such action as will give a right to replevin.

" If the plaintiffs show that articles ordinarily kept in the engine-house are upon a trust to be kept there, unless upon a necessity to remove them to avoid danger, then they must show a wrongful taking or detention. If you find such a trust, then on May 2 the old Washington Engine Company was no longer in existence, but the members had a right to keep the property in safety for the purposes of the company. They had no right to keep it for themselves or for the previous company; and if you find that they intended to keep it from the new company, or to keep it for any other company, then, upon this issue, the plaintiffs are entitled to a verdict.

" As to the property which was not kept in the hall, more must be shown than that the articles were not left there. There is evidence that it was the custom for the foreman to receive the trumpet and badges, and to deliver them to the new foreman. If you find this to be the custom and trust, if he failed to do this when he had reasonable cause to believe that a new company had been formed, then he was acting unlawfully. If the taking of this property by the defendants was for the purpose of safe keeping, then the plaintiffs must make a demand, or they cannot maintain replevin.

" The members of the company of 1881–82 appointed a committee to take charge of the property. Both of the defendants were members of the company on April 29, and took part in the vote, and they were also members of a new organization called the Washington Associates. If this committee was appointed with a common design to get possession for themselves, or for any other organization than the new Washington Engine Company, of property which was held in trust for such new company, then the defendants, who were parties to the act of appointing the committee, are liable for the acts of the committee."

The jury returned a verdict for the plaintiffs; and the defendants alleged exceptions.

*E. Avery*, for the defendants.

*G. F. Williams*, for the plaintiffs.

C. ALLEN, J. It is plain that the defendants had no title to the property, and the principal question was whether they had possession of it under such circumstances that they were liable to an action of replevin by the plaintiffs. The evidence was quite sufficient to warrant a verdict for the plaintiffs. The defendants themselves testified, that they took the property for safe keeping for the old company, — which had no title to it, or right of possession, after the new company should be formed; that they anticipated no danger to the property where it was before they took it; and that they did not take it with the purpose of handing it over to the new company. This taking was by virtue of a vote passed by a portion of the old company, appointing a committee to take charge of the company's property after May 1. This property included the trumpet and officers' badges, as well as the furniture. The whole property appears to have been taken under this vote. The jury might well find that the taking was tortious, and the detention tortious, so that no demand was necessary. It was clearly to be inferred that the defendants took their action for the very purpose of keeping the property away from the new company, which would have the right to its possession and use. *Perry* v. *Stowe*, 111 Mass. 60. *Brookline* v. *Sherman*, *ante*, 1. The fact that, at the time of the original taking, the plaintiffs had not been appointed as enginemen, would not, under these circumstances, render a demand necessary after their appointment. The defendants' act was a wrongful one at the time it was committed, and their detention of the property continued to be wrongful; and the plaintiffs, as soon as they became entitled to the possession, might assert it by an action.

The first six requests by the defendants for instructions all rested on the theory that a demand was necessary. The general effect of the instructions which were given was, that the defendants had no right to keep the property for themselves, or for the previous company; and if they intended to keep it from the new company, or for any other company, then, upon this issue,

the plaintiffs were entitled to a verdict; while, if the taking of the property was for the purpose of safe keeping, then the plaintiffs must make a demand, or they cannot maintain replevin. These instructions were sufficiently favorable to the defendants; and the first six requests were properly refused. The seventh request was properly refused, as inconsistent with the doctrine of *Perry* v. *Stowe*, above cited; and we see no foundation for the eighth request.

This disposes of all the exceptions which were taken at the trial. The defendant has, however, criticised the phraseology of some of the instructions which were given, to which no exception was taken at the trial. In respect to this, it is sufficient to say that we see no reason to apprehend that any injustice was done by the verdict of the jury.                                     *Exceptions overruled.*