## WALL *v.* DE MITKIEWICZ.

CHATTELS, LEASE OF WITH RESERVATION OF TITLE;  REPLEVIN;
    ASSIGNMENT PENDING SUIT; DEMAND; TENDER; FAILURE
    TO RETURN NOTES; PRACTICE; EVIDENCE.

1. Under an agreement for the lease of certain chattels, with a reservation of title until the payment in full of the rent, and a provision for a sale for a nominal consideration upon full payment of such rent, no title passes prior to the performance of the conditions of the agreement; and upon the default of the lessee in payment of rent as stipulated the lessor may maintain replevin to recover possession.

2. And where, subsequent to such default, the lessor executes a written transfer of the said chattels to a third party, the transferee may maintain replevin; and at the trial of such action, evidence tending to show that the transfer was colorable only and intended merely to enable the transferee to maintain the action, will not be admissible on behalf of the defendant.

3. The right of a plaintiff in replevin to recover in the action is not

affected by his assignment, pending the suit, of his interest in the property the subject of suit and of the right to prosecute the cause in his name.

4. That the title of the assignee under an assignment passing the legal title to the interest of the assignor in chattels the subject of a lease is, as between the parties to the assignment, subject to a trust in favor of the assignor, will not defeat the right of the assignee to maintain replevin to recover possession of the chattels.

5. The failure to make a technical tender of storage charges will not render a demand upon a warehouseman for the delivery of property in his possession ineffectual as preliminary to an action of replevin, where the demand was refused by the warehouseman upon other and distinct grounds.

6. Actual demand upon a party in possession of chattels under a lease by the terms of which title is reserved in the lessor until full payment of the rent, with the right in the lessor to retake possession on default in payment, is not necessary as preliminary to maintaining replevin when the lessee secretes himself, or leaves the jurisdiction, or asserts an adverse title to the property.

7. The failure of the lessor of chattels under a lease providing for the payment of rent in instalments to return notes for the amount of the instalments given by the lessee though not required by the lease, will not prevent the lessor from maintaining replevin upon default by the lessee in the payment of rent; but any claim of the lessee growing out of such notes or any disposition made of them is an equitable one strictly.

8. The action of replevin is substantially *ex delicto,* and the verdict may be against one and in favor of another defendant.

9. Where goods taken under a writ of replevin are redelivered to the defendant upon a forthcoming bond, the judgment for the plaintiff would be for the goods and damages for their detention, and the remedy would be upon the bond in the event of its breach; and in such case, it is not necessary, in the replevin action, that the separate value of each piece of goods shall be shown.

No. 564. Submitted May 6, 1896. Decided June 2, 1896.

HEARING on an appeal by plaintiff from a judgment on a verdict directed by the court in an action of replevin. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an action of replevin brought by the appellant,

Julian Wall, against the appellees, Eugene de Mitkiewicz and the American Security and Trust Company, to recover certain articles of household furniture.

October 17, 1890, R. J. Horner & Co., of New York, delivered the furniture to Eugene de Mitkiewicz in accordance with the terms of the following agreement:

" This indenture of lease made this 17th day of October, A. D. 1890, between Robert H. Horner and Thomas I. Birkin, copartners doing business at Nos. 61, 63 and 65 West 23d street in the city of New York, under the firm name of R. J. Horner & Co., parties of the first part, and Eugene de Mitkiewicz of the city of Washington, District of Columbia, party of the second part.

" Witnesseth, that the parties of the first part have agreed to let to hire and do hereby let to hire to the party of the second part for the term of six months commencing with the date of these presents, and the party of the second part doth hereby lease and hire from the parties of the first part for the said term all and singular the goods and chattels and personal property named and described in the schedule marked ' A ' and hereto annexed as a part of this lease for the consideration of the sum of one thousand dollars ($1,000) payable in cash at the time of the execution of these presents and the balance four thousand nine hundred dollars ($4,900) payable as follows, to wit: Five hundred dollars ($500) on October 21st, 1890, two thousand two hundred dollars ($2,200) within ninety days after the date of these presents, and the remainder two thousand two hundred dollars ($2,200) within six months after the date of these presents with interest at the rate of six per cent. per annum on said deferred payments until paid.

" It is further agreed between the said parties to these presents that if default be made by the said party of the second part in the payment of any one or more of the abovementioned sums of instalments of hire when and as the same shall become due it shall be lawful for the said parties of the

first part without any demand or notice whatever to re-
enter into the possession of the said above-described property
and repossess, remove, take away, have and enjoy the said
property wheresoever the same may be found, and to have
and to hold the same as though this agreement of hire had
never been made or entered into.

"It is further agreed that the said property is to be kept
by the party of the second part at premises No. 815 15th
street northwest, in the city of Washington, District of Col-
umbia, and there kept and used and not to be removed
therefrom without the written consent of the said parties of
the first part, and at the expiration of the said term of hir-
ing the said property is to be given up and possession thereof
surrendered by the party of the second part to the said par-
ties of the first part in as good condition as it is now, all
reasonable wear and tear excepted.

"And it is further agreed, that if the said party of the
second part shall remove the said property from the said
premises without said written consent, or shall attempt to re-
move the same, or shall fail to deliver up the same at the
expiration of this lease as hereinbefore provided, the
parties of the first part may without any demand
or notice whatever enter into said premises No. 815
15th street, N. W., in the city of Washington, District
of Columbia, and remove said above-described property,
repossess, take away and enjoy the same as though this
agreement of hire had never been made or entered into;
the parties of the first part covenant and agree with the said
party of the second part that upon the said party of the
second part paying all the specified instalments of hire and
interest thereon and performing the covenants aforesaid,
shall and may peaceably and quietly have and enjoy the
said property for the said term and further the said parties
of the first part further agree that if the said party of the
second part shall well and truly keep the covenants herein
made in every and all respects, they will at the expiration

of the term of this lease sell and convey the said property to the party of the second part for the sum of one dollar.

"It is hereby expressly agreed and understood, that no equity or right of title in or to said above-described property shall vest in the party of the second part by this agreement of lease, it being expressly agreed, contracted, and understood that the title to the said property is and shall remain in the parties of the first part until the said party of the second part shall have fully fulfilled and complied with each and every agreement and covenant herein contained; each and every of said agreements and covenants being made a condition precedent to the sale of the said property by the parties of first part, and further until the execution of the conveyance hereby provided for after such compliance by the party of the second part; the sums herein provided for to be paid by the said party of the second part, being hire for the property only and in no way to be held, taken or considered as on account of the purchase-money thereof.

"In testimony whereof, the said parties hereto have hereunto set their hands and affixed their seals the day and year first above written.

"R. J. HORNER & CO.        [SEAL]

"EUGENE DE MITKIEWICZ.    [SEAL]"

A similar agreement was made on November 10, 1890, covering the delivery of certain additional articles.

De Mitkiewicz paid $1,000 in cash and $300 of the first instalment, and no more. Nothing was ever paid on the second lot of furniture.

On August 5, 1891, de Mitkiewicz called on the attorney of R. J. Horner & Co., in Washington, who had prepared the papers aforesaid, and told him that his landlord was about to attach the furniture for rent, and expressed his desire to avoid the same. He said the furniture was Horner's, and he did not want him troubled; that he wanted him to take care

9 Ct. App.—9.

of the furniture, as he expected to move from the house on the next day.

The attorney went to the house and saw the furniture, and then arranged with the American Security and Trust Company to remove the furniture to its storage warehouse, to be held in the names of Horner & Co. and de Mitkiewicz. The latter agreed that it should be so held, as he had not paid for it, until he should settle with Horner & Co. Some of the furniture was claimed by de Mitkiewicz as belonging to his wife and was retained by him. This was part of the second lot, but the attorney did not know the fact. This furniture was kept by de Mitkiewicz and removed subsequently to another house.

The first lot was removed by the Trust Company, and the memorandum of receipt showed that the articles were in the name of de Mitkiewicz, "lessee of Horner & Co., subject to their rights." Horner & Co. paid the charge for storage as the bills were from time to time presented. They transferred their interest in the furniture to appellant Wall, by the following instrument:

"NEW YORK, 1st Oct., 1892.

"Mr. Julian Wall, 1205 M street, N. W.,

Washington, D. C.

"Dear Sir: In consideration of the sum of one dollar, we have this day sold and assigned to you all our interest in the furniture leased to E. de Mitkiewicz and now on storage with the American Security & Trust Co. of your city.

"Yours respectfully,

"R. J. HORNER & Co."

Shortly after this, Wall called at the office of the Trust Company, presented the leases and the aforesaid bill of sale, and demanded the furniture. He offered to pay any storage charges that might be due, but the Trust Company declined to deliver because of some interest that de Mitkiewicz might have therein. It claimed no interest in the matter save to protect itself as a stakeholder.

It having transpired that de Mitkiewicz had a few articles of the furniture at his house, the appellant called there. The servant who answered the bell said she did not know if de Mitkiewicz was in or not, but would inquire. While she was gone to inquire, appellant heard a very low conversation carried on upstairs. She returned and said he was not at home, and that she thought he was in New York.

Appellant then filed the suit. The property was seized by the marshal and subsequently returned to de Mitkiewicz upon a forthcoming bond presented by him.

Pending the suit, February 17, 1893, the following re-transfer was made by Wall to R. J. Horner & Co.:

" *Julian Wall* v. *Eugene de Mitkiewicz and The American Security and Trust Company.* At Law. No. 33,403.—In consideration of one dollar ($1.00) to me in hand paid and of other valuable consideration, I hereby sell, assign and set over to R. J. Horner & Co., of 61, 63, 65 West 23d St., New York City, N. Y., all my right, title and interest in and to the above-entitled cause, and the results thereof, and hereby give them full right to use my name in the prosecution thereof as fully and to the same extent as I myself might do.

" JULIAN WALL."

" Attest: C. S. BUNDY."

In the cross-examination of Wall and Robert J. Horner, who testified on behalf of the plaintiff, the defendants, over the objection of the plaintiff, elicited facts tending to show that Wall was the Washington agent and salesman of R. J. Horner & Co., and that the transfer to him was for convenience merely and to enable the suit to be instituted in his name.

It appeared also, in the cross-examination of Horner, that de Mitkiewicz had, at the time of the execution of the leases, given notes for the amounts stipulated, although there was no requirement to that effect therein. The notes were delivered to one Burke, a former attorney of Horner & Co., in this matter, who afterwards got in trouble and absconded.

The notes were never returned by him.   It does not appear that they were endorsed to Burke or that they were negotiable.

At the close of the plaintiff's evidence, the court, upon motion of the defendants, instructed the jury to return a verdict for them.

*Mr. W. A. Day* for the appellant:

1. The plaintiff Wall had title (with right of immediate possession) to the chattels in the warehouse of the American Security and Trust Company, and could maintain replevin for them.   Horner & Co. had reserved the right of property in the chattels delivered to the defendant de Mitkiewicz under the two indentures of lease.   No title to the property ever passed to de Mitkiewicz, although he had a right of possession until a breach occurred of his covenants in the indenture.   After such breach he was merely a bailee.   *Harkness* v. *Russell*, 118 U. S. 663.   In this case the whole subject of conditional sales is reviewed and a distinction is drawn between a contract " which is a mere lease or conditional sale, which did not pass the title until the condition should be performed," and a contract where " the title passed by contract, and what was reserved   .  .  .   was a lien or security for the payment of the price, or what is called sometimes a mortgage back to the vendors."   The present case evidently belongs to the former class.   It is a lease of chattels, coupled with an executory contract of sale, upon the performance of conditions precedent.

In *Sanders & Stayman* v. *Wilson*, 8 Mackey, 555, decided on the authority of *Harkness* v. *Russell*, the Supreme Court of the District held that in the case of such " executory conditional sale," in the absence of fraud, no property passed to the bailee until performance of the conditions, either as between the parties or as to third persons.   After default the defendant de Mitkiewicz was a naked bailee, with right neither of property nor of possession, except by license of the own-

ers.  At that time Horner and Company had a right by the terms of the contract to repossess themselves of their property without previous demand or notice.  The defendant The American Security and Trust Company, having accepted a joint bailment of the goods from Horner & Company and de Mitkiewicz subject to the rights of Horner & Co., were bound to surrender to Horner & Co. upon demand, their claims as bailees for hire being satisfied or waived.

Horner & Co. having on October 1, 1892, the full right of property in the chattels, had the power to convey them to the plaintiff Wall, notwithstanding that they did not have actual possession of them.  This would be so even if a conversion had occurred.  *Tome* v. *Dubois,* 6 Wall. 548 ; *Hall* v. *Robinson,* 2 N. Y. 293 ; *Carpenter* v. *Hale,* 8 Gray, 157 ; *The Brig Sarah Ann,* 2 Sumner, 211.

.  Wall's title to the chattels and his consequent right to sue are not dependent upon the motive of the vendors nor upon the reasons which induced them to convey the chattels to him.  If Horner & Co. had a right to convey to him and did convey to him, then he became the owner.  Their right to convey these chattels is unquestioned.

The remaining question under this head is whether the parties intended that the title should pass to Wall.  Horner & Company, having the unqualified property in the chattels and full capacity to sell and convey them, executed a bill of sale, reciting a valuable consideration, to Wall.  The testimony shows that there was no collateral agreement which could operate as a defeasance so that notwithstanding the bill of sale, the title should remain in Horner & Company.  The instrument being sufficient on its face to convey the title, there must be evidence that the intention of the parties was not to convey it before it can be affirmed by the defendants that the title did not pass.  At any rate, this was a question for the jury.  In the action of replevin it is only the *legal* ownership of the plaintiff that is material.  He may be an executor, administrator, assignee in bankruptcy,

or hold under a trust, express or implied, and yet have the sole right to maintain replevin. His accountability over to those ultimately entitled either to the proceeds or to the specific articles, does not affect his power to sue in his own name in replevin or trover.

2. The assignment of Wall to Horner & Co. is immaterial. It is not a reconveyance, but an assignment of Wall's interest in the cause and the results thereof. The filing of that paper in the clerk's office was merely notice to whom it might concern that the fruit of whatever judgment Wall might obtain was to become Horner's. It operates only as an equitable assignment of a judgment which may be obtained by Wall. The judgment, if the plaintiff prevails, will be for Wall. In the subsequent entries of the clerk the phrase (in the entitling of the cause) " to the use of," etc., may be rejected as surplusage. Cobbey on Replevin, Sec. 425; *Pearce* v. *Twitchell*, 41 Miss. 344. The legal title to the chattels remains in the plaintiff, and in replevin the legal title only is considered. In any view it cannot prejudice the rights of the defendants.

3. The surrender of the notes given by de Mitkiewicz for the payments provided for by the terms of the leases is not necessary as a basis for this action. This is not a case where the lessee or bailee of the chattels acquired a title, defeasible upon breach of conditions subsequent, as is the case when the transaction amounts to a sale and mortgage back, so that the lessee or bailee is in the position of a mortgagor. It is a case where the title was reserved to the grantor, according to the distinction made by the Supreme Court of the United States in *Harkness* v. *Russell*, 118 U. S. 693.

4. The demand on the defendant, the American Security and Trust Company, was sufficient. Whatever doubt may have existed formerly it has long been well settled that a bailee is answerable to the true owner, and that he is not in a better situation than his bailor. If the latter has no title, the real owner is entitled to recover the property, in whose

hands soever it may be found.    Story on Bailments, Sec. 102 ; *Wilson* v. *Anderton,* 1  Barn. & Ad. 450 ;  *Ogle* v. *Atkinson,* 5 Taunt. 759.

5. The demand on the  defendant de Mitkiewicz was rendered impossible by his absence and omission to leave any custodian of that portion of the property which was in his possession who could respond to such a demand.    Where a demand would be unavailing it need not be made.  . *Cranz* v. *Kroger,* 22 Ills. 81 ;  Wells on Replevin, Secs. 372 and 373 ; Cobbey  on  Replevin, Sec. 447 ;  *Warder* v. *Hoover,* 51 Iowa, 491.

6. This action ought not to be defeated because it was brought against both of the defendants.    The action is founded on the unlawful detention  by the American Security and Trust Company of the goods in their possession under a claim of title in de Mitkiewicz.    It is an action of tort.    The better opinion is that trover and replevin are always actions of tort.    Dicey on Parties, pp. 25, 531.

In this case the question should  have been submitted  to the jury with proper instructions on this point.    It may be admitted that as to the few articles retained by the defendant de  Mitkiewicz without the knowledge of the plaintiff's vendors, and of which the American Security and Trust Company had never had knowledge, the latter cannot be found guilty nor be charged with any damages for the detention.    There might properly, however, have been a verdict for the plaintiff in replevin against the security company, with  damages for the unlawful detention of the property actually detained by them.    But as to all that portion of the property which was deposited with the security company this action can be maintained against both the defendants.

*Mr. James Coleman* and *Mr. Clarence A. Brandenburg* for the appellees :

1. The question of the *bona fides* of the consideration for

the bill of sale from Horner & Co. to Wall, was proper to be inquired into by the defendant; and if the result of the inquiry showed that no consideration was in fact paid, then the sale to the plaintiff was without consideration, and the plaintiff could not recover, as he must be the owner, or have the right to the possession of the property at the time of the commencement of the action. *Robinson* v. *Woodford*, 37 W. Va. 377; *Poe* v. *Stockton*, 39 Mo. App. 550; *Phillips* v. *Robinson*, 4 Bing. 106; *Peterson* v. *Lodwick*, 62 N. W. 1100; 1 Chit. Pl. 162; *O'Neal* v. *Baker*, 2 Jones (N. C.) L. 168; *Kavanaugh* v. *Brodball*, 59 N. W. 517.

The Supreme Court say, in *Schullenburg* v. *Harriman*, 21 Wall. 58, in a case where there is claim of right of property and possession, that "any evidence is admissible on the part of the defendant which goes to show that the plaintiff has neither property or right of possession." The whole case shows that there was no intention to pass title to the goods to Wall.

2. The plaintiff in his declaration alleged a joint and unlawful seizure and a joint and unlawful detention of the articles sought to be recovered. Having sued the defendants jointly, and having charged them with a joint seizure and joint detention, it was incumbent on the plaintiff to prove a joint seizure and a joint detention. The detention of the goods found at the house of the defendant de Mitkiewicz was on no conceivable theory a joint detention by the defendant de Mitkiewicz and the American Security and Trust Co. *Oskamp* v. *Crites*, 56 N. W. (Neb.) 594.

3. Replevin will not lie to recover goods when the notes have been given, without a tender of the notes. *Kavanaugh* v. *Brodball*, 59 N. W. 617; *Oskamps* v. *Crites*, 56 N. W. 304; *Gamble* v. *Wilson*, 50 N. W. 3.

4. The plaintiff in replevin must have the right to the possession, not only at the commencement of the suit, but at its termination as well. Cobbey on Replevin, Sec. 97; *Le Flore* v. *Miller*, 64 Miss. 204; *Helm* v. *Gray*, 59 Miss. 54;

Wells on Replevin, Sec. 496.   Here the plaintiff, after having performed the only purpose for which the so-called transfer of the goods was made to him, reassigned the goods and the proceedings in this cause brought to recover the same to Horner & Co., who have always—as between themselves and Wall—been the owners of the furniture.

.5. A demand and refusal was clearly necessary before the plaintiff can recover.   The demand must be made in the name of the person interested in the property and upon the person who has authority to deliver.   *Goodwin* v. *Wertheimer*, 99 N. Y. 149.

There is absolutely no pretence that any demand whatever was made, no proof that any was made, and certainly no pretence that de Mitkiewicz ever knew until after suit instituted that Wall ever had or claimed to have any interest whatever in the furniture.   Nor was there sufficient demand on the American Security and Trust Co.   Cobbey on Replevin, Sec. 514.

The goods could not be replevied without payment or tender of the amount of the lien of the Trust Company for storage, and it is no excuse that such a tender would have been useless as the defendant would have refused to surrender the goods.   Cobbey on Replevin, Sec. 521.

Here there is no actual tender.   The witness, Wall, says he offered to pay the amount due.   He produced no money.   Moreover, the only offer he did make was on behalf of Horner & Co.   The American Security and Trust Co., under the circumstances attending the so-called tender, were not obliged to receive any money from Horner & Co., who no longer had any interest in the property according to the alleged bill of sale which Wall produced at the time.   Moreover, the tender has not been kept good.   *Kimball* v. *Farnum*, 61 N. H. 348; *Thompson* v. *Peck*, 115 Ind. 512.

6. There was no proof of the separate value of each article sued for.   Such proof should have been submitted to the jury.   *Haynes* v. *Crutchfield*, 7 Ala. 189; *Blakely* v. *Duncan*,

4 Tex. 184; *Buckner* v. *Higgin,* 3 T. B. Monr. 60; *Millikin* v. *Grier,* 5 Mo. 489; *Baker* v. *Beasley,* 4 Gerg. 570.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The written instrument under which de Mitkiewicz received and held the furniture is more precise and restrictive in its terms and conditions, as regards the retention of title, than that passed upon by the Supreme Court of the United States in *Harkness* v. *Russell,* 118 U. S. 663. In accordance with the doctrine of that case, it must be held that no title whatever passed to de Mitkiewicz. His right to demand a conveyance was conditioned upon his payment of the instalments specified in the lease and the further payment of one dollar. If he has any equities growing out of the part payments that he has made, or out of other transactions connected with this one, they cannot be asserted in this action at law. Default having been made by de Mitkiewicz, the right of R. J. Horner & Co. to recover the furniture by an action of replevin cannot be denied.

2. The next inquiry is, whether the plaintiff Wall had such title under the transfer from R. J. Horner & Co. as would authorize his recovery?

The written transfer vested the legal title in the furniture in Wall, and enabled him to bring the action. It was not necessary that he should have the absolute title. *National Bank Green Bay* v. *Dearborn,* 115 Mass. 219, 223.

It is immaterial to the defendants whether the plaintiff held the legal title subject to a trust that could, or could not, be enforced against him. *Brookline* v. *Sherman,* 140 Mass. 1, 5; *Bisbee* v. *Fadden,* 140 Mass. 6; *Tyler* v. *Freeman,* 3 Cush. 261; *Garrett* v. *Carleton,* 65 Miss. 188. No matter what may have been the object of the transfer to Wall, it is sufficient for the defendants that the result of the litigation must conclude R. J. Horner & Co.

The court erred in permitting the defendant to introduce evidence tending to show that the transfer was colorable and

intended for the purpose of enabling Wall to maintain the action. It passed the legal title as to them, and they were in no attitude that authorized its impeachment. *Curtis* v. *Galvin*, 1 Allen, 215. That the property may have been out of the possession of R. J. Horner & Co. did not affect their right to convey it. *Tome* v. *Dubois*, 6 Wall. 548.

3. The right of Wall to recover was not affected by his assignment, pending the suit, of his interest therein and of the right to prosecute the cause in his name, and it is an irrelevant fact.

4. The situation of the American Security and Trust Company as a mere warehouseman, holding the goods by virtue of a delivery in the name of both R. J. Horner & Co. and de Mitkiewicz, entitled it to a certain demand before the commencement of suit.

The evidence that demand was so made was perfectly satisfactory. It is not apparent that the plaintiff could have done anything more. The duty of the Trust Company was to safely keep the goods until their return should be demanded. The purpose of the rule of law in such cases is, that the party charged with a duty shall have an opportunity to discharge it before suit. There was no right until demand. In this case the Trust Company refused delivery because the title was in controversy, and the books of the warehouse showed that de Mitkiewicz had an interest in it. It is now contended, in support of the judgment below, that the demand should have been accompanied by a legal tender of the money necessary to pay the storage charges to date. The point is without merit, because it appears that the plaintiff offered to pay the storage charges, if any, at the time of demand. No technical tender was necessary, because the Trust Company refused upon other distinct grounds to make delivery.

5. It is questionable if de Mitkiewicz was entitled to have demand made at all. He had shown his inability to pay

for the furniture, and had suggested its removal to the warehouse as the property of R. J. Horner & Co.

As regards so much of the furniture as was actually delivered to the Trust Company, it may be regarded as his agent; and it is to be observed that its refusal to recognize the plaintiff's right was founded on an adverse right claimed by de Mitkiewicz.

As to the items of furniture that he retained without the knowledge of Horner & Co. and removed without their consent to other premises, in direct violation of the contract, they had the right, by express stipulation of the contract, to seize and take possession thereof without demand or notice; and there was nothing to show a waiver of the right.

But it appears that the plaintiff went with his attorney to the house of de Mitkiewicz to demand the furniture which had been retained. The servant who received their cards said that she would see if he was in. After going up stairs and conversing in a low tone with some one, she returned and said that he was out and she thought had gone to New York. Asking to see Mrs. de Mitkiewicz they were informed that she was dangerously ill. They then called upon de Mitkiewicz's attorney and told him their purpose. He proposed to them that de Mitkiewicz would surrender the furniture and release all claim to it upon the payment of $1,000 to him and all the expenses of storage. This the plaintiff refused to do, and on the same day brought his suit. This evidence was neither contradicted nor explained.

If de Mitkiewicz secreted himself so as to prevent demand being made of him, or had left the jurisdiction, or if he had asserted an adverse title to the property and denied the plaintiff's right of possession, actual demand in person was not necessary. 5 A. & E. Encyc. Law, 528*b*, and cases cited; Cobbey on Replevin, Secs. 447, 448; Wells, Replevin, Sec. 372; *Cranz* v. *Kroger*, 22 Ill. 74, 81.

6. The judgment cannot be supported on the ground of the failure of Horner & Co. to return the notes given by

de Mitkiewicz. These notes seem to have been given in amounts and with due dates as stipulated in the lease contract, though not required by any condition thereof.

The giving of these notes did not affect the terms of the contract. There is no pretence that they were given or received as payment, or upon any new agreement of the parties. As no title to the furniture could pass except upon compliance with the terms of the contract, the failure to return the notes cannot, in law, change its effect. Any claim that the defendant might have growing out of those notes or any disposition that may have been made of them is an equitable one strictly.

The cases cited on behalf of the appellees are not applicable. *Kavanaugh* v. *Brodball,* 59 N. W. Rep. 517, is a case where a first mortgagee, after having assigned the notes and the mortgage to a bank as collateral security, brought an action of replevin against a subsequent mortgagee. He was denied the right to maintain the action because he had parted with his legal title. *Oskamp* v. *Crites,* 59 N. W. Rep. 394, is a case where the sale and delivery were made subject to a forfeiture of the title conveyed by nonpayment of the purchase-money notes. It was held, first, that the title passed by virtue of the contract of sale; and, second, that in order to have any right under the contract, the plaintiff ought to have returned, or offered to return, the notes. Nor is there anything in the case of *Segrist* v. *Crabtree,* 131 U. S. 287, that conflicts with *Harkness* v. *Russell, supra,* or the doctrine thereof as applied to the facts of this case. In that case Babb had made an absolute bill of sale of the cattle to Crabtree, receiving notes for the purchase money. The cattle were removed from Texas to New Mexico. The notes not having been paid, Babb undertook to sell the cattle to Segrist and others. Without surrender of the notes, the vendees, acting with Babb's son, who held a power of attorney from his father, seized the cattle and took them away. In defence to the action brought against them by Crabtree,

they contended that the sale was conditional, and that the title was not to pass until payment of the notes. The jury were told that as against the claim of Babb, the notes were to be regarded as *prima facie* evidence of payment so long as Babb held them, and that he could not retain them and yet treat them as having no force. It was left to the jury to find whether the sale was an absolute one upon credit merely, or whether the vesting of title was conditioned upon the payment of the purchase money evidenced by the notes; and they were told that, in the latter case, upon the failure to pay the notes when due, Babb had a right to retake the cattle if he did not elect to keep the notes.

Again, it seems from the evidence in this case, that the notes were delivered by Horner & Co. to an attorney whom they had retained early in the controversy; that the attorney had gotten in trouble, resulting in his confinement in jail for a time in Brooklyn, and then disappeared; and that the notes had been lost or carried away by him. On a demurrer to the evidence, it may be inferred that the notes were given to the attorney for such use in the controversy as might be necessary. It does not appear that they were given him for any other purpose, or that they were endorsed.

7. The judgment cannot be supported on the misjoinder of defendants as the question arises here. The action of replevin is substantially *ex delicto*, and the verdict may be against one and in favor of another. It is not the form of the action that controls, but its substance. *Chaffee* v. *United States*, 18 Wall. 516, 538.

Under the facts of this case, de Mitkiewicz may be liable for each item of the furniture replevied, whilst the Trust Company would be liable for such only as it actually received and detained, unless possibly it may have estopped itself by joining its codefendant in the forthcoming bond for all of the furniture. The bond does not appear in the record, but from the recital in the judgment it would seem that it was a joint one. The case is not one where wrongful

acts of each defendant related to different property, and were distinct and wholly separable from each other. In such case, even, a misjoinder would not be fatal; but the plaintiff might be put to his election, in a proper manner, of the party against whom he would proceed. *Powell* v. *Bradlee*, 9 G. & J. 220.

8. The last point of the appellees, that there is a fatal defect in the evidence in that it does not show the separate value of each piece of furniture, must also be decided against them. The form of the declaration in replevin is provided in the statute, and the allegation of value, as therein set forth, is general. R. S. D. C., Sec. 814. There are circumstances which, under the statute, would seem to call for this separate proof, but they do not exist here. Id., Sec. 822. In this case a judgment for the plaintiff would be for the goods, and damages for their detention. They have been delivered to the defendants upon their forthcoming bond, and the remedy is upon that in the event of its breach.

For the reasons given, the judgment must be reversed, with costs to the appellant, and the cause remanded for a new trial.

*Reversed and remanded.*